IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS L. SENDRA, SR., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09 C 884 |
| ) | |
| JOHN E. POTTER, Postmaster General, United ) | Judge Virginia M. Kendall |
| States Postal Service, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Thomas L. Sendra, Sr. ("Sendra"), a white male veteran, sued John E. Potter, Postmaster General of the United States Postal Service ("Postal Service"), alleging that the Postal Service violated Title VII and discriminated against him based on race and color when it failed to hire him for a laborer custodial position. The Postal Service moves for summary judgment. For the following reasons, the Court grants the Postal Service's Motion for Summary Judgment.

**STATEMENT OF UNDISPUTED FACTS**[1]

Local Rule 56.1 provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). As the moving party, the Postal Service submitted material facts supported by citations to portions of the record and affidavits, as Rule 56.1(a) requires. Sendra, however, made no Rule 56.1 submissions either disputing the Postal Service's 56.1 statements or presenting additional material facts of his own. Under Rule 56.1, the Court deems admitted all of the Postal

---

[1] The Court will refer to the Postal Service's 56.1 facts as "P.S. ¶ __." Sendra not only failed to file a response to the Postal Service's 56.1 facts, in which case they are deemed admitted, but also did not file his own additional facts as Local Rule 56.1 permits. *See* L.R. 56.1(b)(3)(B), (C).

Service's facts. L.R. 56.1(b)(3)(C). Moreover, the Court's review of Sendra's claim will be confined to the facts set forth in the Postal Service's Rule 56.1 statements. *See Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1108-09 (7th Cir. 2004); *see Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) (Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.").

## I. Application Process

On October 7, 2007, the Postal Service issued a hiring worksheet for a laborer custodial position at the Hazel Crest Post Office in Hazel Crest, Illinois. (P.S. ¶ 1.) Postal Service regulations restricted certain positions, including the laborer custodial position, to those who qualified for a veteran preference under the Veteran's Preference Act of 1944. (*Id.* ¶ 2.) This restriction did not apply if the Postal Service filled the position through internal career placements, including promotion, reassignment, or changes to a lower employment level. (*Id.*)

At first, the Postal Service advertised this opening to veterans only, not internally to non-veterans. (*Id.* ¶ 3.) Sendra, a white male veteran, saw the opening and was interested in the position. (*Id.*) Even before this position became available, however, Sendra had qualified for placement on a list for future employment consideration. (*Id.*) Placement on this register made veterans such as Sendra eligible to apply for open positions with the Postal Service, but did not automatically mean they were qualified for all positions. (*Id.*)

The Postal Service sent Sendra a letter indicating that he had until October 23, 2007 to contact Postmaster Beverly Greene, a black female, to set up an interview. (*Id.* ¶ 4.) This letter noted that Sendra must "meet all suitability requirements prior to selection," including successfully

passing a drug test and criminal background check. (*Id.*) According to Sendra's EEO Investigative Affidavit, Postmaster Greene told him that he would be hired for the position "as long as [his] background check came back ok." (*Id.* ¶ 19.)

Sendra interviewed with Postmaster Greene and completed the drug test on October 17, 2007. (*Id.* ¶ 5.) On October 24, 2007, Sendra submitted his employment application, had his fingerprints taken, and submitted the necessary paperwork for the background check. (*Id.*) At this time Postmaster Greene again told Sendra that he would have to pass the drug test and background check to qualify for the position. (*Id.*)

## II. Background Check

On November 6, 2007, Sheelah White, a Postal Service Human Resources Specialist, submitted four background searches for Sendra: County Criminal, Statewide Criminal, Kwikscreen (GIS Criminal Conviction Database), and Name and Address History. (*Id.* ¶ 6.) The background report came back to the Postal Service on November 13, 2007 with a grade of "Review" and "Supplement pending," which meant that the Statewide Criminal report was not complete. (*Id.*) The Postal Service then submitted this background search again on November 21, 2007, and on November 29, 2007, it came back again with a grade of "Review" and "Supplement pending." (*Id.* ¶ 7.) The Postal Service resubmitted the background check request one more time, but by January 2008 it was still pending. (*Id.* ¶ 8.)

While his background check was pending, Sendra contacted Postmaster Greene multiple times to check on the status of his application. (*Id.* ¶ 9.) Following each call Postmaster Greene checked with human resources about the progress of the background check and each time human

3

resources told her that it was still pending. (*Id.*) Sendra told Postmaster Greene that there was nothing on his criminal record that could be causing the delay. (*Id.* ¶ 10.)

Under Postal Service regulations, there was a 21-day window, which began on October 24, 2007 when Sendra submitted the application, for completing the hiring process. (*Id.* ¶ 11.) On December 19, 2007, after this time period had long since expired, Geraldine Diaz, a human resources specialist, instructed Postmaster Greene to close out the hiring process as soon as possible. (*Id.*) A short time later Postmaster Greene requested an extension for Sendra due to the previous delays. (*Id.* ¶ 12.)

### III. Position Offered to Annie Blue

Annie Blue ("Blue"), a black female and full-time mail carrier for the Postal Service, approached Postmaster Greene in early January 2008 and expressed an interest in the laborer custodial position, a downgrade from the mail carrier position. (*Id.* ¶ 13.) Because the laborer custodial position had been open for 70 days, far longer than the 21-day period, Postmaster Greene offered the job to Blue. (*Id.* ¶ 14.) Blue, unlike Sendra, was not an "applicant for employment" because she was already employed with the Postal Service, so she was already "qualified" for the position and did not have to pass a background check. (*Id.* ¶ 20.) Moreover, since Blue's move from mail carrier to the laborer custodial position was an internal career placement, the Veteran's Preference Act did not apply. (*Id.* ¶ 14.)

When Sendra's background check finally cleared on January 30, 2008, the position had been given to Blue and was no longer available. (*Id.* ¶ 15.) Sendra claims that the Postal Service, through Postmaster Greene, intentionally failed to submit his background check, withheld the results of the background check, and failed to follow up on the background check. (*Id.* ¶¶ 16, 21.) These delay

4

tactics were allegedly used to deprive Sendra of the position and give it to a black applicant instead. (*Id.* ¶ 16.) Specifically, Sendra claims that "[a]ll of the workers at the Hazel Crest post office were African American, to my knowledge, and I believe that if I were African American I would have gotten the position." (*Id.* ¶ 17.) When Sendra was at the Hazel Crest location for his interview, however, he never saw all of the employees working at that office because all of the carriers were out performing their duties. (*Id.* ¶ 18.) Of the sixteen employees at the Postal Service's Hazel Crest location, six are not black. (*Id.*)

## IV. EEO Claim

On February 28, 2008, Sendra contacted the Postal Service's EEO Dispute Resolution Office ("DRO"). (*Id.* ¶ 22.) The DRO conducted an initial interview and Sendra received notice of Right to File a Discrimination Complaint from the DRO, on June 9, 2008; as a result, Sendra filed a complaint with the Postal Service alleging discrimination based on race and color for not being hired for the laborer custodial position. (*Id.* ¶¶ 23-25.) Following a full investigation, on November 14, 2008, the Postal Service's EEO Investigative Services Office issued a decision finding that Sendra did not have a valid discrimination claim. (*Id.* ¶ 26.) Sendra then filed his Complaint on February 12, 2009, and later his First Amended Complaint on September 8, 2009. (R. 1, 25.)

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d

5

654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

Sendra asserts a claim of reverse discrimination under Title VII for not being selected for the laborer custodial position. While both the direct and indirect methods of proof are available to Sendra, he admits that he cannot in good faith assert a claim under the direct method.[2] Taking all of the Postal Service's facts as admitted, the issue before the Court is whether Sendra's reverse discrimination claim can proceed under the indirect method.

**I.    Prima Facie Case Under Indirect Method**

Under Title VII of the Civil Rights Act of 1964 it is unlawful for an employer to "fail or refuse to hire . . . any individual with respect to his compensation, terms, conditions, or privileges

---

[2] "While it may be true that Sendra has no direct evidence of discrimination, to defeat a motion for summary judgment in a Title VII case, a plaintiff who cannot provide direct evidence of discrimination may use the 'burden shifting' method outlines [sic] in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." (R. 39, Response Br. 2.)

6

of employment, because of such individual's race [or] color." *See* 42 U.S.C. § 2000e-2. In the failure to hire context, Sendra establishes a prima facie case of discrimination under the indirect method by showing: (1) that he is a member of a protected class; (2) that he was qualified and applied for an open position, (3) that, despite his qualifications, he was rejected; and (4) the Postal Service filled the position with someone who was not a member of the protected class, or the position remained open. *Koszola*, 385 F.3d at 1110; *Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Sendra can make out a prima facie case, the Postal Service must then "articulate a legitimate, nondiscriminatory reason" for deciding not to hire him; if the Postal Service provides such a reason, Sendra must then show that it is pretextual. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005) (quoting *Koszola*, 385 F.3d at 1110); *Farr v. St. Francis Hosp. and Health Ctrs.*, 570 F.3d 829, 833 (7th Cir. 2009).

Summary judgment is the "put up or shut up" stage of the lawsuit and as the plaintiff Sendra has the burden to present evidence sufficient to persuade a rational fact-finder that he has a legitimate claim. *Koszola*, 385 F.3d at 1111. Sendra cannot rely on the allegations made initially in his First Amended Complaint, but rather must come forward with admissible evidence to support his claims. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). And in the context of a Title VII case, Sendra shoulders the responsibility to submit competent evidence to satisfy each of the four elements required to establish a prima facie case of discrimination. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999).

Here, despite Sendra's failure to file any Rule 56.1 response, the undisputed facts show that (3) and (4) of the prima facie test are met: Sendra was not hired for the position and instead Blue was. The Court will therefore address whether Sendra was a member of a protected class, which in

7

the context of a reverse discrimination case turns on whether there are "background circumstances" showing the Postal Service discriminated against whites, and whether Sendra was qualified for the laborer custodial position.

> A. **"Background Circumstances"**

Title VII claims are not limited to "members of historically discriminated-against groups." *Mills*, 171 F.3d at 454. In fact, the legislative history of Title VII notes that it applies to "all Americans," including "white men and white women." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976). But a literal reading of the "member of a protected class" element would eliminate all reverse discrimination claims from white plaintiffs like Sendra, and such a result would be contrary to Congress's clear intent about the scope of Title VII. As such, in reverse discrimination cases the Court eliminates the membership in a protected class element of the traditional *McDonnell Douglas* test. In its place, Sendra must show "'background circumstances' that demonstrate that a particular employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something fishy' about the facts at hand." *Mills*, 171 F.3d at 455-57 (7th Cir. 1999) (modifying *McDonnell Douglas* test to reverse discrimination claims); *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003).

The "background circumstances" element looks to the specific facts surrounding the alleged adverse action to determine if there is an "inference that the defendant is one of those unusual employers who discriminates against the majority." *Mills*, 171 F.3d at 455 (quoting *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997)). In *Mills*, the Seventh Circuit approvingly cited a variety of factual situations that, if supported by plaintiff's evidence, would support a finding of an inference of discrimination. For example, fixing performance ratings to

disadvantage white plaintiffs or, for no legitimate reason, altering hiring procedures from previous practice to hinder the hiring of white plaintiffs adequately showed something was "fishy." *Mills*, 171 F.3d at 455 (citing *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)). Or discriminatory circumstances exist if the past hiring practices indicate an unwavering preference for minority candidates, the decisionmaker expressed a preference for minority candidates, and the minority candidate eventually hired is appreciably less qualified than the rejected plaintiff. *See, e.g., Duffy v. Wolle*, 123 F.3d 1026, 1037 (8th Cir. 1997).

Moreover, there can be an inference of discrimination if minorities "dominate" supervisory positions and the candidate who is hired or promoted is also a minority. In *Mills*, the male plaintiff presented evidence that during a seven-year period almost all promotions went to women and women controlled all the supervisory positions in that office. *Mills*, 171 F.3d at 457. Similarly, in *Hague v. Thompson Distribution Co.*, 436 F.3d 816 (7th Cir. 2006), plaintiffs, all of whom were white, "presented evidence that their black boss fired them and replaced three of them with black employees, the fourth plaintiff's job was assumed by a black employee, and the fifth was not replaced." *Id.* at 822. The facts presented by the plaintiffs in *Mills* and *Hague* constituted competent evidence to show an inference of discrimination.

Yet, sparse, conclusory statements unsupported by Rule 56.1 submissions are insufficient to satisfy such an inference. *Kohut v. Home Depot U.S.C., Inc.*, No. 09 C 4321, 2010 WL 5288172 (N.D. Ill. Dec. 16, 2010) (Holderman, J.). In *Kohut*, Home Depot fired the plaintiff, a 59-year-old white male. In arguing his reverse discrimination claim he stated that the decisionmakers were all non-whites, yet the record supporting that characterization was incomplete. Although two of the decisionmakers involved were non-whites, the record did not contain any evidence about the "racial

9

identity" of the other six decisionmakers, nor was there any evidence elucidating Home Deport's hiring and promotion procedures. *Id.* at *9. Due to this "sparse record," the court held that the plaintiff failed to carry his burden of setting forth an inference of discrimination.

Here, Sendra argues in his response brief that certain facts support "background circumstances" from which a discriminatory inference can be found. He has failed to support those allegations within a Rule 56.1 statement however. Sendra underestimates his burden as the plaintiff to establish the inference of discrimination. Even if the Court were to assume that all of these arguments were properly supported by evidence as required by Rule 56, they fall short of adequately showing background circumstances such as those held to be sufficient in *Mills* and *Hague*.

The Postal Service asserts that there was nothing "fishy" going on at the Hazel Crest Post Office because six out of sixteen employees at the Hazel Crest Post Office are non-blacks. Sendra argues without support that because the Postal Service "presents nothing" indicating how many of these six employees are white, there is a "question of fact" that prevents granting summary judgment. It is Sendra's burden, not the Postal Service's, to present reliable evidence establishing discriminatory background circumstances. Sendra's failure to use discovery to determine the racial identity of the six non-black employees, leaves him without a claim that there is a genuine issue of material fact about the "racial make-up" of the Hazel Crest employees. He simply has failed to present any facts to rebut the Postal Service's position that no inference of discrimination can be drawn from the racial make-up of the employees working at the Hazel Crest Post Office.

Even taking all of the Postal Service's 56.1 facts in a light most favorable to Sendra, only two facts arguably contribute to background circumstances: (1) only six of the sixteen employees were non-blacks; and (2) instead of hiring Sendra, Postmaster Greene, who is black, hired Annie Blue,

10

who is also black. (P.S. ¶¶ 13, 14, 18.) Even though the majority of employees at the Hazel Crest Post Office during the relevant time were black, there are no facts showing that it was a "racially charged environment" or that these black employees were decisionmakers. *Contra Lupescu v. Napolitano*, 700 F. Supp. 2d 962, 976 (N.D. Ill. 2010) (Gottschall, J.) ("predominance of African-American supervisors plus evidence of a racially charged environment and the lack of evidentiary support for [plaintiff's] termination" supported finding of inference of discrimination). This statistic, standing alone, which Sendra failed to develop using the available tools of discovery, is insufficient to support a conclusion that circumstances were conducive to discrimination against whites.

Sendra argues that Postal Service employees sabotaged the timely submission and successful completion of his background check. Conceivably, if Sendra could show that all of the employees involved in this process were black, it would be similar to *Mills*, where there was an inference of discrimination because only women were involved in the promotion process. The facts, taken as true by the Court because they were not refuted, are that only Postmaster Greene, who oversaw the job search effort, is black. Sendra offers no facts about the racial identity of Sheelah White, the contract human resources employee who submitted the background checks; Geraldine Diaz, the human resources specialist who instructed Postmaster Greene to quickly fill the vacant position; nor the company (independent from the Postal Service) that was responsible for actually conducting the background investigation.[3] Due to these deficiencies, even the *Mills* case cannot help Sendra.

Sendra's remaining arguments are based on speculation, not admissible evidence gathered through discovery, and are wholly inadequate at the summary judgment stage. First, the fact that

---

[3] The Postal Service's brief indicates that Sendra never deposed any of the employees at the Hazel Crest office who allegedly had a role in delaying his background check. (R. 36 at 1.)

Sendra's background check ultimately came out clear is irrelevant. Although the precise reason for the delay is unclear, there are no facts to support a conclusion that discrimination was a motivating factor. Rather, the undisputed facts demonstrate the opposite. Under Postal Service regulations, there was a 21-day window to complete the hiring process for the laborer custodial position. Postmaster Greene extended the time period for Sendra to complete the background check and offered the job to Blue only after the position had been open for 70 days and Geraldine Diaz put pressure on her to complete the process. (*Id.* ¶ 14.) Second, Sendra contends that it is "bizarre" that he never received an explanation for why he was not hired. Again, he fails to support this conclusion and as such it is discarded. Even so, no reliable inference of discrimination emerges from this allegation. Finally, Blue, the candidate chosen for the job, was better qualified for the laborer custodial position. *Contra Duffy*, 123 F.3d at 1038 (candidate selected not "substantially less qualified" than plaintiff). Prior to accepting the laborer custodial position, Blue worked as a mail carrier for the Postal Service, which was a higher level job. She was familiar with the inner workings of the Postal Service, and had already passed the required background check. Based on the facts before the Court, Sendra had no previous experience doing this type of work or awareness of the institutional workings of the Postal Service.

Sendra has failed to show background circumstances establishing that the Postal Service discriminated against "majority" job candidates like Sendra. *See, e.g., Kohut*, 2010 WL 5288172, at *9 (due to "scant record," plaintiff could not establish that defendant had an "inclination to discriminate invidiously against whites"). Sendra's claim is doomed by his own failure to actively develop his allegations through discovery and submission of Rule 56.1 statements. He has failed to present any evidence that creates an inference of discrimination or an indication that anything was

"fishy" at the Hazel Crest Post Office. He therefore does not meet the "background circumstances" element of the prima facie test.

### B. Qualifications

The purpose of Title VII is to level the playing field by taking "discriminatory preference[s]" out of the hiring equation. *McDonnell Douglas*, 411 U.S. at 800. But Congress did not create Title VII to "guarantee a job to every person regardless of qualifications." *Id.* Sendra must therefore establish that he was qualified for the laborer custodial position.

Here, it is undisputed that successfully completing the background check was a qualification for the laborer custodial position. Sendra never obtained in a timely manner his completed background check. Completion of this qualification, however, was out of his control and the Postal Service diligently tried to obtain it. As a result, there is an insufficient basis to find that Sendra's case fails this prima facie element.

Regardless, Sendra fails to sufficiently show background circumstances evidencing an inference of discrimination. For this reason, he cannot establish a prima facie case of reverse discrimination.

## II. Pretext

Even so, Sendra's reverse discrimination claim cannot proceed for another separate reason: the Postal Service provided a legitimate, nondiscriminatory reason for not hiring Sendra—he never passed the background check and was therefore unqualified for the position—and Sendra offers nothing to suggest this reason is pretextual. Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). "A 'pretext for discrimination' means more than an unusual act; it means something worse than a

business error; 'pretext' means deceit used to cover one's tracks." *Id.* at 684. A plaintiff alleging pretext is required to establish that: (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the decision; or (3) the proffered reasons were insufficient to motivate the decision. *See Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999).

Sendra contends that the "real reason" for the Postal Service not hiring him was discrimination, not the fact that he had not timely passed the background check, a prerequisite for employment. Here once again, though, Sendra relies on his response brief to speculate about the Postal Service's discriminatory motive. He provides no support for these theories from admissible evidence obtained through discovery.

As such, there are no facts from which the Court could conclude this reason is pretextual. Sendra was not better qualified than the selected candidate. If anything, Blue was more qualified. Sendra also speculates that the Postal Service purposefully delayed submitting his background check materials, but he has failed to present any evidence to support such a claim. The record evidence shows that the Postal Service hired Blue instead of Sendra out of necessity—it needed to fill the position quickly and no positive results came back on Sendra's background check. Based on the record before the Court, Sendra has not gathered any facts to substantiate the allegations in his First Amended Complaint that the Postal Service actively impeded the processing of his background check. They remain allegations. The facts establish that the Postal Service resubmitted his background check multiple times to the company responsible for doing the check and quickly and thoroughly responded to Sendra's inquiries. The Postal Service had no direct control over performing the background check and did everything it could for Sendra until it simply ran out of time and had to fill the position.

Sendra not only fails to establish a prima facie case of reverse discrimination, but also cannot establish that the Postal Service's nondiscriminatory reason for not hiring him was pretextual.

**CONCLUSION AND ORDER**

For these reasons, the Court grants the Postal Service's Motion for Summary Judgment.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 9, 2011